IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JIALI TANG, et al.                    :

                                      :

     v.                               :   Civil Action No. DKC 09-0088

                                      :

SYNUTRA INTERNATIONAL, INC.,
et al.                                :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this products liability action are motions filed by Defendants Synutra International, Inc., and Synutra, Inc., to dismiss on the ground, *inter alia*, of *forum non conveniens* (paper 8), and to file under seal their response to a notice of recent development filed by Plaintiffs Jiali Tang, *et al.* (paper 20),.  The issues are fully briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary.  For the reasons that follow, both motions will be granted.

**I.  Background**

In September 2008, amid reports of widespread illness among infants in the People's Republic of China related to the consumption of powdered milk formula and similar products, the Chinese Administration of Quality Supervision, Inspection and Quarantine ("AQSIQ") initiated an emergency testing program of the country's dairy supplies.  Later that month, AQSIQ announced

that certain lots of infant formula were found to contain melamine, a chemical commonly used as an industrial component in plastics, adhesives, countertops, dishware, and whiteboards. Melamine is not a food additive. It is not fit for human consumption and has never been approved for such purpose by any national authority.

By December 1, 2008, approximately 300,000 Chinese infants were found to have ingested dairy products contaminated with melamine. As a result, at least six infants have died and scores of others have required medical treatment for maladies associated with kidney damage. AQSIQ found varying amounts of melamine in sixty-nine batches of infant milk powder produced by twenty-two companies, including certain lots of the "U-Smart" brand produced by Sheng Yuan Nutritional Food Co., Ltd. ("Sheng Yuan"), a Chinese subsidiary of Defendant Synutra, Inc.

In response to this crisis, the Chinese government, in conjunction with the China Dairy Industry Association, established a compensation program administered by China Life Insurance Company based on medical information provided by the Ministry of Health and other government agencies ("the compensation program"). The compensation program is funded by the twenty-two dairy companies that produced the contaminated milk products and totals approximately $160 million. It offers a lump-sum payment to the families of affected children

according to the extent of injury, as well as compensation for related medical expenses.     To date, the families of approximately ninety-five percent of the injured children have reportedly accepted the remedies provided by the plan.  Of those who have not, some have not yet been located and others have opted instead to bring suits in Chinese courts.  As discussed herein, the adequacy of the Chinese courts to adjudicate these suits is a significant point of contention between the parties; indeed, it is the critical factor of the *forum non conveniens* analysis in this case.

Plaintiffs, one hundred Chinese citizens residing in China, bring this suit on their own behalf as parents and on behalf of fifty-three minor children who allegedly suffered adverse health conditions, predominantly the development of kidney stones, as a result of ingesting contaminated milk products produced by Defendants' Chinese subsidiaries.     Defendant Synutra International, Inc., a publicly traded holding company incorporated in Delaware, owns all or substantially all of the equity in nine operating subsidiaries in China through Synutra, Inc., its wholly-owned subsidiary incorporated in Illinois.  The principal place of business of both Synutra International, Inc., and Synutra, Inc., is in Maryland.

Plaintiffs filed their complaint in this court on January 15, 2009, on the basis of diversity jurisdiction, asserting

claims of negligent infliction of personal injury, negligent infliction of emotional distress, intentional injury or gross negligence, intentional infliction of emotional distress, battery, breach of warranty, fraud, and negligent misrepresentation. Plaintiffs seek compensatory damages of at least $5.5 million for each child and $1.5 million for each parent, as well as a collective punitive damages award of $500 million. (Paper 1, at 36-42). Defendants filed their motion to dismiss on April 1, 2009, on the grounds of *forum non conveniens*, failure to state a claim under Fed.R.Civ.P. 12(b)(6), and failure to join a party under Fed.R.Civ.P. 12(b)(7). (Paper 8).[1]

After the motion to dismiss had been briefed in full, Plaintiffs filed a "Notice of Recent Development," asserting that "one of three Chinese lawyers and scholars who submitted Declarations in support of Plaintiffs' Opposition [to Defendant's motion to dismiss], was arrested from his home in Beijing on July 29, 2009, at 5:00 a.m., by Chinese police authorities." (Paper 17, at 1).[2] According to Plaintiffs, this

---

[1] Because the court will dismiss the case on *forum non conveniens* grounds, it will not consider the alternative grounds for dismissal.

[2] Neither party has identified any authority for the filing of their respective notices of recent development in relation to Defendants' motion to dismiss. Plaintiffs' initial notice . . . Continued

scholar was "the driving force behind the Open Constitution Initiative," a Chinese advocacy group that "has taken on sensitive cases, including those of the families of children who were injured or killed in the melamine-tainted milk scandal." (*Id*. at 2).  Plaintiffs offer this as proof that China does not provide an available and adequate forum for their suit, which, as will be seen, is the critical issue in the *forum non conveniens* analysis.

Plaintiffs' supplemental filing prompted a response from Defendants, who advised in their "Notice of Recent Development," through a supplemental declaration of Weiguo Zhang, that a Chinese court had recently accepted a melamine contamination suit against Sheng Yuan, thereby purporting to demonstrate that the Chinese forum is available and adequate to adjudicate Plaintiffs' claims.  (Paper 18).  Plaintiffs responded, on December 18, 2009, by filing yet another "Notice of Recent Development" containing the declaration of Fafu Qiu (paper 19), purporting to refute Defendants' notice, and Defendants moved,

---

(paper 17) appears to be in the nature of a surreply, but a party is permitted to file a surreply only upon obtaining leave of the court, *see* Local Rule 105.2(a), and leave was neither requested nor granted in this case.  To the extent that the parties, without objection from the other side, have supplemented their position papers, the material has been considered.  Plaintiffs' initial filing, however, lacks evidentiary reliability for reasons that will be discussed later.

on December 29, to file under seal papers containing sensitive information with regard to the pending Chinese suit in reply to Plaintiffs' opposition papers (papers 20, 21).

## II. Motion to Seal

Defendants' motion must comply with Local Rule 105.11, which provides:

> Any motion seeking the sealing of pleadings, motions, exhibits or other papers to be filed in the Court record shall include (a) proposed reasons supported by specific factual representations to justify the sealing and (b) an explanation why alternatives to sealing would not provide sufficient protections. The Court will not rule upon the motion until at least 14 days after it is entered on the public docket to permit the filing of objections by interested parties. Materials that are the subject of the motion shall remain temporarily sealed pending a ruling by the Court. If the motion is denied, the party making the filing will be given an opportunity to withdraw the materials.

There is also a well-established common law right to inspect and copy judicial records and documents. *See Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597 (1978). If competing interests outweigh the public's right of access, however, the court may, in its discretion, seal those documents from the public's view. *See In re Knight Publishing Co.*, 743 F.2d 231, 235 (4th Cir. 1984).

Furthermore, prior to sealing any documents, the court must provide notice of counsel's request to seal and an opportunity

6

to object to the request before making its decision. *Id*. Either notifying the persons present in the courtroom or docketing the motion "reasonably in advance of deciding the issue" will satisfy the notice requirement. *Id*. at 234. Finally, the court should consider less-drastic alternatives, such as filing redacted versions of the documents. If the court decides that sealing is appropriate, the court should provide reasons, supported by specific factual findings, for its decision to seal and for rejecting alternatives. *Id*. at 235.

Here, Defendants move to seal their reply papers in response to Plaintiffs' opposition to Defendants' notice of recent development because they contain "information about the medical records of an infant in China." (Paper 20, ¶ 1). Defendants assert that "they do not believe that there are effective alternatives to filing under seal" and that because "[t]hese materials relate to individuals who are in China and not before this Court[,] . . . the confidentiality rights, if any, of the individuals . . . would not be protected adequately by alternatives – such as a protective order – to filing under seal." (*Id*. at ¶ 3). Plaintiffs oppose the motion to seal, primarily contesting the evidentiary value of the Chinese case to that before the court, but further asserting that "there are manifestly less drastic alternatives available to protect [the

privacy interests of the deceased child and his family], such as modest redaction of the papers filed." (Paper 22, at 3).

Although the papers sought to be sealed are of little relevance to the court's analysis of the critical issues, insofar as they contain confidential medical records, Defendants' motion to seal will be granted. Because this opinion neither references nor relies on the sealed materials, it will not be filed under seal.

## III. Motion to Dismiss for *Forum Non Conveniens*

### A.   Standard of Review

In *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 507 (1947), the Supreme Court of the United States explained that "[t]he principle of *forum non conveniens* is simply that a court may resist imposition upon its jurisdiction even when jurisdiction is authorized by the letter of a general venue statute." In reaffirming and restating the doctrine, which is now largely limited to cases in which the alternative forum is outside the United States, the Court has instructed that it applies "where trial in the plaintiff's chosen forum imposes a heavy burden on the defendant or the court, and where the plaintiff is unable to offer any specific reasons of convenience supporting his choice." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 249 (1981). The defendant "ordinarily bears a heavy burden in opposing the plaintiff's chosen forum," but where, as here, the plaintiff

brings suit outside its home forum, "the presumption in the plaintiff's favor 'applies with less force,' for the assumption that the chosen forum is appropriate is in such cases 'less reasonable.'" *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430 (quoting *Piper Aircraft Co.*, 454 U.S. at 255-56).

"At the outset of any *forum non conveniens* inquiry, the court must determine whether there exists an alternative forum." *Piper Aircraft Co.*, 454 U.S. at 254 n.22. The defendant bears the burden of establishing that the alternative forum is available to all parties and that an adequate remedy is available to the plaintiff. "Although some courts conflate these issues, the availability and adequacy of the supposed forum are better seen as raising independent issues that warrant separate consideration by the court." 14D Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure § 3828.3 (3d ed. 2007).

Ordinarily, a defendant can satisfy the availability element by showing that it is "amenable to process" in the alternative forum. *Piper Aircraft Co.*, 454 U.S. at 254 n.22 (internal quotation marks omitted). Where the remedy offered by the alternative forum "is so clearly inadequate or unsatisfactory that it is no remedy at all," however, the court "may conclude that dismissal would not be in the interests of

justice." *Id*. at 254.   While courts have strictly required defendants to demonstrate that the alternative forum offers "at least some relief," they "have not always required that defendants do much to refute allegations of partiality and inefficiency in the alternative forum." *Leon v. Millon Air, Inc.*, 251 F.3d 1305, 1311 (11th Cir. 2001).   Many courts have presumed the adequacy of the alternative forum and placed at least the burden of production on the plaintiff to establish otherwise.   *See Leon*, 251 F.3d at 1312; *Vaz Borralho v. Keydril Co.*, 696 F.2d 379, 393-94 (5th Cir. 1983), *overruled on other grounds by In re Air Crash Disaster Near New Orleans*, 821 F.2d 1147 (5th Cir. 1987)).   These courts, moreover, have rejected generalized and conclusory allegations by plaintiffs as being insufficient to carry this burden, requiring instead that an evidentiary showing be made in support of claims that the alternative forum is inadequate.   *See El-Fadl v. Central Bank of Jordan*, 75 F.3d 668, 678 (D.C. Cir. 1996); *Mercier v. Sheraton Int'l, Inc.*, 981 F.2d 1345, 1351 (1st Cir. 1992), *cert. denied*, 113 S.Ct. 2346 (1993).   As the United States Court of Appeals for the Eleventh Circuit explained in *Leon*, 251 F.3d at 1312, "defendants have the ultimate burden of persuasion, but only where the plaintiff has substantiated his allegations of serious corruption or delay."

Regardless of the allocation of burden, courts generally agree that "only the most perilous obstacles to conducting litigation, evidenced by a complete absence of due process in the alternative forum, will render [the alternative] forum inadequate." *Gonzalez v. P.T. Pelangi Niagra Mitra Int'l*, 196 F.Supp.2d 482, 486 (S.D. Tex. 2002); *see also Rasoulzadeh v. Associated Press*, 574 F.Supp. 854, 861 (S.D.N.Y. 1983) (denying a motion to dismiss for *forum non conveniens* where plaintiffs would likely be shot if they pursued their claim in Iran), *aff'd*, 767 F.2d 908 (2nd Cir. 1985) (unpublished). So long as the alternative forum "offers a remedy and process for resolving the dispute," it will be deemed adequate. *Compania Naviera Joanna, SA v. Koninklijke Boskalis Westminster NV*, 569 F.3d 189, 204 (4th Cir. 2009).

If an available and adequate alternative forum is found to exist, the defendant must then establish that certain private and public interest factors militate in favor of dismissal, principally those identified by the Supreme Court in *Gulf Oil Corp.*, 330 U.S. at 508-09. At this stage of the analysis, the court must "scrutinize the substance of the dispute between the parties to evaluate what proof is required, and determine whether the pieces of evidence cited by the parties are critical, or even relevant, to the plaintiff's cause of action and to any potential defenses to the action." *Van Cauwenberghe*

11

*v. Baird*, 486 U.S. 517, 528 (1988).   This inquiry "does not necessarily require extensive investigation," however, and "may be resolved on affidavits presented by the parties."   *Van Cauwenberghe*, 486 U.S. at 529.   As the Supreme Court has repeatedly counseled, courts must "retain flexibility" in balancing the private and public interests at stake, as "'[e]ach case turns on its facts.'"   *Piper Aircraft Co.*, 454 U.S. at 249 (quoting *Williams v. Green Bay & Western R. Co.*, 326 U.S. 549, 557 (1946)).

A district court may consider a *forum non conveniens* objection prior to addressing any other threshold issues regarding a complaint, and "may dispose of an action by a *forum non conveniens* dismissal, bypassing questions of subject-matter and personal jurisdiction, when considerations of convenience, fairness, and judicial economy so warrant."   *Sinochem Int'l Co.*, 549 U.S. at 432.   The determination to dismiss a case on *forum non conveniens* grounds rests in the sound discretion of the court.   *See Piper Aircraft Co.*, 454 U.S. at 257; *see also Kontoulas v. A.H. Robins Co., Inc.*, 745 F.2d 312, 314 (4th Cir. 1984).

**B.   Analysis**

Defendants argue that Plaintiffs' complaint should be dismissed under the doctrine of *forum non conveniens* because China constitutes an available and adequate forum that is a more

suitable arbiter of the merits of the case than the District of Maryland, which has virtually no nexus to the relevant events. In opposing, Plaintiffs primarily dispute the adequacy of the Chinese courts to adjudicate their claims, contending that while these courts may be nominally available, in practice they have failed to respond to suits brought by those who have opted not to participate in the government's compensation program in contravention of Chinese procedural rules. Plaintiffs further argue that even if Defendants are found to have met their burden with regard to availability and adequacy, they have failed to establish that the public and private interest factors favor the Chinese forum.

## 1.  Availability and Adequacy of the Alternative Forum

Although Plaintiffs challenge both the availability and adequacy of the alternative forum to adjudicate their claims (Paper 12, at 7), there is no question that the Chinese forum is available. As noted, availability is established where the defendant shows that it is "amenable to process" in the alternative forum. *Piper Aircraft Co.*, 454 U.S. at 254 n.22. Here, Defendants submit the Declaration of Weiguo Zhang, President of Synutra, International, Inc., and Synutra, Inc., who affirms that Defendants "would not contest the service of process in the event the plaintiffs here were to bring their action in China." (Paper 8, Ex. 1, Zhang Dep., at ¶ 7). An

agreement by the defendant to submit to the jurisdiction of the foreign forum typically satisfies the availability requirement, *see Gonzalez*, 196 F.Supp.2d at 486 (citing *Aguinda v. Texaco, Inc.*, 142 F.Supp.2d 534, 539 (S.D.N.Y. 2001)), and Plaintiffs do not allege that Defendants are not amenable to jurisdiction in China.

In *Kontoulas*, 745 F.2d at 316, the United States Court of Appeals for the Fourth Circuit held that expiration of the statute of limitations in the alternative forum may render the alternative forum unavailable.  Defendants have addressed that concern, however, through the Declaration of Mingxing Qian, a law professor at Peking University School of Law, who opines that Plaintiffs will have two years from the date "they knew or should have known of the alleged damages" to bring "tort claims for damages caused by defective products" in Chinese courts. (Paper 8, Ex. 2, Qian Dep., at § 1.3.2).  Plaintiffs' opposition papers do not challenge this assertion.  Accordingly, Defendants have carried their burden of establishing that China is available as an alternative forum.

The question of whether China constitutes an adequate forum is the primary issue in dispute.  It is addressed primarily by the parties' competing declarations.  Defendants' declarant, Professor Qian, opines that Chinese courts are adequate to resolve Plaintiffs' dispute and describes in detail the method

by which their claims would be adjudicated.  He asserts that Chinese law provides standing for foreign plaintiffs, causes of action for personal injury and products liability, a right to present evidence and argument in court, the power to compel witness testimony, and a right to appeal.  (Paper 8, Ex. 2, Quian Decl., at §§ 1.2-1.4).  Moreover, according to Professor Qian, plaintiffs are entitled to recover compensatory damages for expenses such as loss of income, related travel expenses, food subsidies, living expenses for dependents, as well as compensation for emotional damages, but not punitive damages. (*Id.* at §§ 2.2, 2.3).  Professor Qian further affirms that the compensation program was established for the benefit of victims of the milk contamination crisis; that it has "resolved the claims of almost 300,000 injured children with lump-sum payments"; and that it will be used to provide ongoing treatment for the injured children until they reach the age of eighteen. (*Id.* at § 4).  He states that the Chinese courts remain open to those victims choosing not to accept compensation under the program, citing reports in China that "there have been suits filed by about 100 persons – in the range of 0.03 percent of the injured children – which are still at the pleading stage (with the courts directing claimants to remedy the filings to comply with the pleading requirements discussed above)."  (*Id.*).

Plaintiffs submit three declarations in rebuttal. Jinglin Li, an experienced attorney practicing civil and criminal litigation in China, affirms that he is "one of several volunteer attorneys who have tried to represent tainted-milk victims in China, including some of the plaintiffs listed in this action." (Paper 12, Ex. 4, Li Decl., at ¶¶ 1, 2).[3] Mr. Li avers that on September 22, 2008, following media reports of AQSIQ finding that milk supplies had been contaminated with melamine, "several volunteer attorneys" were summoned to a meeting held at the Beijing Bureau of Justice, a government entity, where an official "demanded all attorneys to withdraw from representation on tainted-milk cases." (*Id.* at ¶ 5). Despite the pressure to withdraw, Mr. Li states that he "submitted a Motion of Complaint with the Intermediate People's Court of Qingdau" on March 2, 2009, "representing 54 victims seeking damages against Sheng Yuan." (*Id.* at ¶ 6). Pursuant to Chinese procedural rules, the court was required either to accept or reject the case within seven days, allowing for an

---

[3] Plaintiffs initially did not elaborate as to whether any of them has actually attempted to file suit in China; rather, their opposition papers allude to having consulted with Chinese attorneys who had been thwarted in their prior attempts to do so. (Paper 12, at 11). The supplemental material refers to one such case. (Papers 18 and 19). The newspaper reports cited in Plaintiffs' first supplemental filing cannot be considered. It is inappropriate for judicial notice and otherwise lacks evidentiary support.

appeal if the complaint was rejected, but seven days passed without notice of any action. Mr. Li avers that when he inquired as to the status of the case he was told "there was no update available" and was denied permission to speak with "the Chief Judge of the Intermediate People's Court of Qingdao." (*Id*. at ¶¶ 9, 10). Thereafter, he "submit[ted] a Motion of Complaint with the High People's Court of Shandong Province, the highest local court in the ShanDong Province," on behalf of "73 Synutra victim families against Synutra," but that court has similarly taken no action on his motion. (*Id*. at §§ 11, 12). By failing to accept or reject these complaints, Mr. Li opines, the Chinese courts have denied litigants access to the courts, as well as the right to appeal an adverse ruling; consequently, "all Synutra victim families are left with no legal redress, but infinite waiting." (*Id*. at §§ 13, 14).[4]

Plaintiffs also present the Declaration of Zhiyong Xu, a law professor at Beijing University of Posts and Telecommunications and "a delegate of the 13th and 14th People's Congress for the Haidian District of Beijing, China." (Paper 12, Ex. 5, Xu Decl., at ¶ 1). Professor Xu affirms that he also

---

[4] The remainder of Mr. Li's declaration details similarly-thwarted attempts to bring suits on behalf of victims of other contaminated-milk suppliers. He further claims that his refusal to comply with governmental pressure to withdraw from such representation resulted in his dismissal from the law firm at which he was employed. (Paper 12, Ex. 4, Li Dep., at ¶¶ 15-29).

served as a volunteer attorney representing victim families, including those who contracted symptoms after ingesting Sheng Yuan milk products.   Like Mr. Li, Professor Xu recounts his efforts to file complaints on behalf of the victims, which were met by Chinese courts with inaction or outright refusal to accept filings without explanation.   Professor Xu further avers that he has filed motions of complaint with the Supreme People's Court of China, the country's highest court, but has received no response.   (*Id*. at ¶¶ 10, 11).   Even after the Supreme People's Court of China reportedly made a public announcement on March 2, 2009, indicating that the courts "were ready to process civil lawsuits for tainted-milk cases," his filings on behalf of the victims have been met with inaction.   (*Id*. at ¶¶ 16-20). Notably, Professor Xu states that after repeated efforts the Basic People's Court of Xinghua District accepted "two of the 63 victims' complaint[s]," but that he was subsequently advised that "the court would no longer accept any case filed by tainted-milk victims from outside of Hebei Province," requiring instead that "all plaintiffs shall file his or her case in a people's court having jurisdiction over the plaintiff's domicile."   (*Id*. at ¶¶ 23, 24).   This procedure, Professor Xu opines, is "contrary to the express language" of Chinese civil procedure.   (*Id*. at ¶ 25).   Professor Xu further opines that the compensation program – pursuant to which the families of

18

children who died are allotted damages of approximately $29,000, families of "seriously sickened children" receive $4,400, and "those suffering from other kidney problems" receive $292 – is not "a legal remedy," but rather "a settlement offer made by these 22 dairy companies, including Synutra (Sheng Yuan) to all tainted-milk victims." (*Id.* at ¶¶ 28, 29).

Finally, Plaintiffs submit the Declaration of Pingan Tian, a law professor at the Southwest University of Political Science and Law in Chongqing, China, who opines that "plaintiffs in the above-styled case do not have meaningful access to the judicial system in China and thus cannot receive meaningful legal remedies in China." (Paper 12, Ex. 6, Tian Decl., at ¶ 6). After explaining the process by which such suits are typically initiated, Professor Tian cites reports indicating that none of the motions of complaint filed by contaminated-milk victims in accordance with this law has been "either accepted or formally denied" (*Id.* at ¶ 24), resulting in the cases remaining perpetually in limbo. Professor Tian further opines that the "government-sanctioned settlement is fundamentally different from a legal remedy" under Chinese law, that it is "inadequate and unfair," but stands as the only realistic hope for compensation to victims due to the obstruction presented by Chinese courts. (*Id.* at ¶¶ 41-47).

In reply, Professor Qian affirms on behalf of Defendants that Plaintiffs' declarants do not provide "a fair or accurate description of the [Chinese] legal system." (Paper 16, Ex.1, Qian Decl., at ¶ 4). According to Professor Qian, "Plaintiffs speculate that the courts are acting in a passive manner, and thereby delaying the process, but delays are not uncommon and often occur during the period required for the courts to assess whether the complaint meets the requirements of a civil lawsuit." (*Id*. at ¶ 16 (internal quotation marks omitted)). In opining that the Chinese courts are adequate to adjudicate Plaintiffs' claims, he cites the March 2, 2009, public statement of the Supreme People's Court, the country's highest court, that "the people's courts were ready to accept melamine cases" and Professor Xu's acknowledgement that cases have been accepted since that time in support. He further suggests that the delay experienced by Plaintiffs' declarants is due to certain procedural defects in these filings rather than an unwillingness of the courts to adjudicate such matters. (*Id*. at ¶¶ 15-27). As to the compensation program, Professor Qian acknowledges that "[c]ompensation amounts for personal lawsuits in China, which is still a developing country, are not as high as those in more developed countries"; nevertheless, he opines, "[c]onsidering the average income available in China, the [] plan provides compensation that is fair and reasonable compared with

compensation amounts available in other personal injury lawsuits in China." (*Id*. at ¶¶ 35, 36).

The dispute as to the adequacy of the Chinese forum to adjudicate these claims, therefore, boils down to the competing declarations of the parties. The picture painted by Defendants is that China has a well-developed legal system with procedural safeguards similar to those provided by courts of the United States, that the country's highest court has expressly announced that the lower courts are "ready to accept" melamine cases, and that several cases have been accepted since that time. Plaintiffs do not dispute that there is a legal process in place in China for handling their claims. They contend, however, that the Chinese courts are deviating from this process with respect to melamine claims and pressuring lawyers to withdraw representation of these claimants, thereby forcing the unfortunate victims into a Hobson's choice between pursuing futile litigation or accepting the meager remedy provided by the compensation program.

In an unpublished decision, *Fidelity Bank PLC v. M/T TABORA*, No. 08-1706, 2009 WL 1668619, at *3 (4th Cir. June 16, 2009), the Fourth Circuit was presented with the "question of whether a *forum non conveniens* dismissal may be based on only a possibility that an alternative forum is available," but ultimately determined that it "need not grapple" with the

question under the circumstances of the case.  In so ruling, however, the court cited *Bank of Credit & Commerce Int'l (Overseas) Ltd. v. State Bank of Pakistan*, 273 F.3d 241, 247 (2d Cir. 2001), as holding that "a district court dismissing a case on *forum non conveniens* grounds should have a 'justifiable belief' that the [alternative forum] would not decline to hear the case." *Fidelity Bank PLC*, 2009 WL 1668619, at *3.  In that case, the United States Court of Appeals for the Second Circuit explained that a court considering such an issue must engage in "a full analysis of those issues of foreign law or practice that are relevant to its decision" and "closely examin[e] all submissions related to the adequacy of the foreign forum." *Bank of Credit & Commerce Int'l (Overseas) Ltd.*, 273 F.3d at 248.  If, in doing so, the court is unable to make a "definitive finding as to the adequacy of the foreign forum," it may "protect the non-moving party by making the dismissal conditional," but only if it first asserts a "justifiable belief" that the alternative forum is adequate, citing its reasons therefor.  *Id.* at 247-48.

In the competing declarations presented by the parties here, Defendants have established a justifiable belief that that the alternative forum is adequate.  Preliminarily, the Supreme Court and Fourth Circuit have both recently found China to be an adequate forum in the context of *forum non conveniens*

22

dismissals, albeit under circumstances distinguishable from those presented here. *See Sinochem Int'l Co., Ltd.*, 549 U.S. at 435; *Compania Naviera Joanna SA*, 569 F.3d at 205. The parties do not dispute, moreover, that on March 2, 2009, the highest court in the People's Republic of China announced that the lower courts "were ready to process civil lawsuits for tainted-milk cases" (Paper 12, Ex. 5, Xu Decl., at ¶ 16), and that since that time at least a handful of cases have been accepted. (*Id.* at ¶ 23). This suggests that prior to that date the Chinese courts struggled with how such claims would be processed, but that these difficulties have since been resolved. *See generally Leon*, 251 F.3d at 1313 (Ecuadorian forum was not inadequate where Ecuadorian judges had gone on strike and many were removed by Congress but the instability was subsequently resolved). While Plaintiffs complain of continued delays after the announcement, Defendants observe that such delays are not out of the ordinary and may have been occasioned by procedural defects in the motions of complaint filed by Plaintiffs' declarants. (Paper 16, Ex. 1, Qian Decl., at ¶¶ 24-32). In any event, the prospect of delay presented by the alternative forum does not typically render the alternative forum inadequate. *See, e.g., Satz v. McDonnell Douglas Corp.*, 244 F.3d 1279, 1283 (11th Cir. 2001) ("fear of delays in the Argentine courts do not render Argentina an inadequate forum"); *Borden, Inc. v. Meiji Milk*

*Prods. Co.*, 919 F.2d 822, 829 (2nd Cir. 1990) ("some inconvenience or the unavailability of beneficial litigation procedures similar to those available in the federal district courts does not render an alternative forum inadequate"); *cf. Bhatnagar v. Surrendra Overseas Ltd.*, 52 F.3d 1220, 1228 (3d Cir. 1995) (finding delay of at least fifteen to twenty years in Indian courts rendered the remedy there "clearly inadequate," under *Piper Aircraft Co.*).

In essence, Plaintiffs ask that a value judgment be made, on the basis of the limited evidence presented, that corruption in the Chinese judiciary would systematically deny them access to a legal remedy there. The vast majority of courts considering similar claims, however, have found them to be unpersuasive. *See, e.g., El-Fadl*, 75 F.3d at 678 (State Department report expressing "concern about the impartiality" of Jordanian courts did not render that forum inadequate); *Blanco v. Banco Indus. de Venezuela, S.A.*, 997 F.2d 974, 981 (2d Cir. 1993) (finding Venezuelan court adequate alternative forum despite allegations of corruption); *Mercier*, 981 F.2d at 1351 (determining that Turkish courts were adequate despite plaintiff's complaints of bias against foreign litigants and women). Moreover, courts have rightly been reluctant to cast such aspersions on foreign judicial systems absent a substantial showing of a lack of procedural safeguards. *See, e.g., PT*

24

*United Can Co., Ltd. v. Crown, Cork & Seal Co., Inc.*, 138 F.3d 65, 73 (2d Cir. 1998).  Here, Plaintiffs have demonstrated that similar claimants have encountered difficulties in pursuing relief in Chinese courts, but their argument that due process is completely lacking is not persuasive.

Under the low threshold established by the Supreme Court in *Piper Aircraft Co.*, Defendants have met their burden of showing that China is an adequate forum.  As the *Piper* Court explained, dismissal on *forum non conveniens* grounds may be improper where "the remedy provided by the alternative forum is so clearly inadequate or unsatisfactory that it is *no remedy at all*." *Piper Aircraft Co.*, 454 U.S. at 254 (emphasis added).  While the Chinese forum at issue here may not be ideal from Plaintiffs' perspective, "[a]n adequate forum need not be a perfect forum." *Satz v. McDonnell Douglas Corp.*, 244 F.3d 1279, 1283 (11th Cir. 2001).

Even if the Chinese courts were not open to Plaintiffs, another remedy is undisputedly available to them, namely, the compensation program.  While the Plaintiffs characterize the program as a "government-sanctioned settlement plan" from the companies that produced the contaminated milk products, as opposed to a legal remedy (Paper 12, Ex. 5, Xu Decl., at ¶ 29), they fail to cite any authority for the proposition that the

available remedy need be "legal" in nature.  Indeed, there is precedent to the contrary.

In *Lueck v. Sundstrand Corp.*, 236 F.3d 1137 (9th Cir. 2001), survivors and estates of plane crash victims aboard a New Zealand commuter flight that originated and crashed in New Zealand filed suit in the United States District Court for the District of Arizona against the Canadian manufacturer of the plane and the American manufacturer of the plane's ground proximity warning system. New Zealand law barred civil claims for damages, providing instead for a no-fault award of benefits such as medical and rehabilitative expenses, lost earnings, and quarterly allowances based on disability through a state-sanctioned insurance company.  *Lueck*, 236 F.3d at 1141-42. After the district court granted the defendants' motion for dismissal on the grounds of *forum non conveniens*, the plaintiffs appealed to the United States Court of Appeals for the Ninth Circuit, arguing principally that the district court erred in finding that New Zealand was an adequate alternative forum.

In affirming, the Ninth Circuit first observed that the plaintiffs' argument "relie[d] on a misdirected forum non conveniens inquiry" because the district court "was not required to ask whether [p]laintiffs could bring this lawsuit in New Zealand, but rather, whether New Zealand offers a remedy for their losses." *Id*. at 1143.  Observing the low threshold for

adequacy of the alternative forum in *Piper Aircraft Co.*, as well as the diminished degree of deference owed to plaintiffs bringing suit in a foreign forum, the Ninth Circuit found that "[a] New Zealand remedy is unquestionably available here." *Id.* at 1144. The court reasoned that "[a]lthough New Zealand law does not permit Plaintiffs to maintain this exact suit, New Zealand, through its no-fault accident compensation scheme, has provided and continues to provide a remedy for Plaintiffs' losses." *Id.* Significantly, as it relates to the instant case, the court further determined that "[t]he forum non conveniens analysis does not look to the precise source of the plaintiff's remedy, so we will not require the alternative forum to offer a judicial remedy." *Id.* at 1144-45 (citing *Jeha v. Arabian American Oil Co.*, 751 F.Supp. 122, 125 (S.D.Tex. 1990) (finding that a "quasi-judicial special commission" designated to handle malpractice claims in Saudi Arabia constituted an adequate alternative forum)).

Plaintiffs' attempt to distinguish *Lueck* is unpersuasive. They argue that the New Zealand compensation scheme was enacted by the legislature, and that the plaintiffs there "had already collected their compensation as allowed and prescribed by the Act," whereas here the "Chinese legislature has not acted" to legislate the compensation plan and Plaintiffs have not accepted any compensation. (Paper 12, at 17-18). Those are distinctions

without substance, however.  The crux of the Ninth Circuit's decision in *Lueck* was its finding, consistent with *Piper Aircraft Co.*, that some remedy was unquestionably available to the plaintiffs, which rendered the alternative forum adequate. Regardless of whether it was enacted by the Chinese legislature or sanctioned by the judiciary, it is undisputed that the compensation program developed in China in the wake of the melamine contamination crisis was organized and sanctioned by government entities working in conjunction with the dairy industry and administered through an insurance provider.  Even if the compensation program does not qualify as a "legislative," "judicial," or "administrative" remedy, as Plaintiffs argue, it nevertheless constitutes a remedy not dissimilar to that found to be adequate in *Lueck*.  Furthermore, the fact that Plaintiffs here have not yet accepted compensation under the program, unlike the *Lueck* plaintiffs, has no bearing on the equation.  In the context of the Ninth Circuit's decision, the *Lueck* plaintiffs' acceptance of compensation merely demonstrated that "a New Zealand remedy is unquestionably available here."  *Lueck*, 236 F.3d at 1144.  Similarly, Plaintiffs in this case do not dispute that they are eligible for benefits under the compensation program.

To be certain, the remedy offered by the compensation program is far less lucrative than what Plaintiffs seek in the

District of Maryland.   Under the Chinese compensation program, Plaintiffs may expect to receive, at most, a lump-sum payment of $4,400 and compensation for related medical expenses.   (Paper 12, Ex. 5, Xu Decl., at ¶28 and Ex. A).   That pales in comparison to the hundreds of millions of dollars in compensatory and punitive damages they seek here.   "The Supreme Court has made clear," however, that "courts are not 'to compare the rights, remedies, and procedures available under the law that would be applied in each forum' to determine whether 'the law applied by the alternative forum is as favorable to the plaintiff as the chosen forum.'"   *Compania Naviera Joanna SA*, 569 F.3d at 204; *see also Gonzalez v. Chrysler*, 301 F.3d 377, 381-82 (5th Cir. 2002) (finding Mexican statutory cap on damages of $2,500 for wrongful death did not render the alternative forum "clearly unsatisfactory"), *cert. denied*, 123 S.Ct. 1928 (2003); *In re Compania Naviera Joanna S.A.*, 531 F.Supp.2d 680, 687 (D.S.C. 2007) (citing *Gonzalez* and *Lueck* for the same proposition), *aff'd as modified*, 569 F.3d 189 (4th Cir. 2009).

While the court is not unsympathetic to Plaintiffs' plight, Defendants have met their burden of establishing a justifiable belief that the Chinese forum offers Plaintiffs a remedy for their injuries.   Accordingly, the alternative forum is both available and adequate.

## 2.  Private and Public Interests

Having established the availability and adequacy of the Chinese forum, the *forum non conveniens* inquiry turns to the analysis of the private and public interest factors at stake, including but not limited to those identified by the Supreme Court in *Gulf Oil Corp.*, 330 U.S. at 508-09.  As distilled by the Fourth Circuit, these factors include:

> (1)  the ease of access to sources of proof; (2) the availability of compulsory process for securing the attendance of unwilling witnesses; (3) the costs of obtaining the attendance of witnesses; (4) the ability to view the premises; (5) the general facility and cost of trying the case in the selected forum; and (6) the public interest, including administrative difficulties, the local interest of having localized controversies decided at home, and the interest of trying cases where the substantive law applies.

*Compania Naviera Joanna, SA*, 569 F.3d at 200 (citing *American Dredging Co. v. Miller*, 510 U.S. 443, 448 (1994) (quoting *Gulf Oil*, 330 U.S. at 508)).  In this analysis, the defendant bears the burden of showing not only that the forum chosen by the plaintiff is not the best forum, but also that another forum is more appropriate.  *Kontoulas*, 745 F.2d at 315.

It is undisputed that Plaintiffs are citizens and residents of China filing suit for damages incurred in that country allegedly resulting from defective products produced, marketed, and sold there.  Accordingly, Plaintiffs' choice of forum in the

District of Maryland is entitled to little deference. *See Piper Aircraft Co.*, 454 U.S. at 255-56.   As the private and public interest factors here overwhelmingly favor dismissal, however, the deference accorded Plaintiffs' choice of forum is of no real consequence.

The private interest factors clearly support the conclusion that China is the more appropriate forum.   Because the events giving rise to this action occurred primarily, if not exclusively, in China, it is "reasonable to assume that there will be more Chinese witnesses than United States witnesses," and that "the relevant evidence is much more likely to be found in China."   *In re Compania Naviera Joanna S.A.*, 531 F.Supp.2d at 688.   Moreover, the Chinese forum would have the power to compel the testimony of unwilling witnesses and the cost of producing willing witnesses would be significantly reduced there.   The present forum, by contrast, could not compel the testimony of Chinese witnesses and would pose substantial expense and inconvenience.   Many of the witnesses would speak only Chinese and much of the documentary evidence would be written in that language, thereby necessitating translation of not only all the documentary evidence but also the testimony of most witnesses from Chinese to English if the suit were to proceed here. Furthermore, Defendants assert a desire to implead allegedly responsible Chinese third parties that would be beyond the

jurisdiction of this court.  (Paper 8, at 12).  While Defendants could bring indemnification or contribution claims in China if Plaintiffs were successful in the litigation here, proceeding in that manner would be unduly burdensome and inefficient. Considering also that at least a few cases against Chinese producers of melamine-contaminated milk products have been accepted for adjudication in the Chinese forum, any litigation initiated by Plaintiffs in China would be significantly aided by the experience and precedent of the Chinese courts in adjudicating related matters.

The factors of public interest also weigh strongly in favor of dismissal.  As Defendants observe, adjudicating Plaintiffs' claims here would require the application of Chinese law.  *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Philip Morris Inc. v. Angeletti*, 358 Md. 689, 744 (2000).  In the present forum the court would be substantially burdened with attempting to "untangle problems in conflict of laws, and in law foreign to itself," while the same concerns would not be presented in China.  *Gulf Oil Corp.*, 330 U.S. at 509; *see also In re Compania Naviera S.A.*, 531 F.Supp.2d at 689.  Moreover, because this case "touch[es] the affairs of many persons" in China and there is "a local interest in having localized controversies decided at home," principles of comity militate heavily in favor of that forum resolving the dispute.  *Gulf Oil*

32

*Corp.*, 330 U.S. at 509.   The District of Maryland has comparatively little interest in a case involving the extent of liability, if any, of an international holding company and its subsidiary for injuries inflicted abroad, and jury duty "ought not to be imposed upon the people of a community which has no relation to the litigation." *Id*. at 508-09.

In sum, Defendants have convincingly met their burden of demonstrating that the private and public interest factors at issue favor the Chinese forum and disfavor litigation in the District of Maryland.

### C.   Conditions of Dismissal

Where a *forum non conveniens* motion is granted, the vast majority of courts, including the Fourth Circuit, have used the conditional dismissal device as a safeguard against the uncertainty that the alternative forum will exercise jurisdiction over the claims. *See Compania Naviera Joanna, SA*, 569 F.3d at 205.   By attaching conditions to the dismissal, courts may "obviate[] the need for extensive inquiry into foreign jurisdictional law, since if the foreign court refuses to take jurisdiction, 'plaintiff is still protected by the conditional nature of the dismissal.'" *Calavo Growers of California v. Generali Belgium*, 632 F.2d 963, 968 (2nd Cir. 1980) (quoting *Schertenleib v. Traum*, 589 F.2d 1156, 1163 (2nd Cir.

1978)); *see also Bank of Credit & Commerce Int'l (Overseas) Ltd.*, 273 F.3d at 247-48.

Here, however, because the alternative compensation plan is undisputedly available to Plaintiffs, a conditional dismissal will not be employed to protect Plaintiffs' rights to pursue a judicial remedy in the alternative forum.

## IV.  Conclusion

For the foregoing reasons, Defendants' motions to seal and to dismiss on the ground of *forum non conveniens* will be granted.  A separate Order will follow.

```
_____/s/_____
DEBORAH K. CHASANOW
United States District Judge
```